IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RODRIGO LEDEZMA PERALES, Individually and as Representative of the Estate of EFRAIN LEDEZMA PERALES, deceased, <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANTS SERGEANT JONATHAN WUNEBURGER, in his individual capacity, and JOHN DOE Nos. 1–10, in their individual capacities, <br><br> Defendants. | Case No. _____ <br><br> Jury Trial Demanded |

## COMPLAINT

NOW COMES Rodrigo Ledezma Perales, Individually and as Representative of the Estate of the deceased, EFRAIN LEDEZMA PERALES, by and through his attorneys, The Law Offices of Kathleen T. Zellner, P.C. and Youngkin & Doss, P.L.L.C., and for his complaint against Defendants SERGEANT JONATHAN WUNEBURGER, in his individual capacity, and JOHN DOE Nos. 1–10, in their individual capacities, states as follows:

### INTRODUCTION

1.  Plaintiff brings this action against Defendants seeking redress for the violation of rights secured to Efrain Ledezma Perales ("Efrain"), Deceased, by the

Fourth, Eighth, and/or Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

2. This court has jurisdiction over the claims raised in this complaint under 42 U.S.C. §1983 and 28 U.S.C. §1331.

3. Venue is proper under 28 U.S.C. §1391(b)(1) because, on information and belief, at least one Defendant resides in this judicial district. Venue is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

4. At the time of his death, Efrain was a citizen and resident of the State of Texas.

5. Plaintiff, Rodrigo Ledezma Perales, is Efrain's biological brother. On December 8, 2021, Plaintiff was appointed to be the administrator of Efrain's estate by order of the County Court of Galveston County.

6. On information and belief, Defendant Sergeant Jonathan Wuneburger, is domiciled in the State of Texas and is a resident of League City, situated within Galveston County.

7. At all times relevant to this Complaint, Defendants Wuneburger and John Does Nos. 1–10 were duly appointed deputies of the Galveston County Sheriff's Office employed as correctional officers at the Galveston County Jail.

8. At all times relevant to this Complaint, Defendants Wuneburger and John Doe Nos. 1–10 were acting in the course and scope of their employment.

9. At all times relevant to this Complaint, Defendants Wuneburger and John Does Nos. 1–10 were acting under color of state law.

10. Defendants Wuneburger and John Doe Nos. 1–10 are sued in their individual capacities.

## FACTUAL BACKGROUND

11. Efrain was a 48-year-old Hispanic male with a slight build.

12. Efrain has no violent criminal history.

13. On information and belief, on November 28, 2020, Efrain was suffering from one or more mental illnesses.

14. On November 28, 2020, at approximately 8:54 a.m., Efrain was arrested by the Galveston Police Department. He was accused of trespassing the property at 1312 39th Street, Galveston, Texas.

15. At that time, Efrain resided a few blocks away from the subject property.

16. Witnesses at the scene—believed to be residents of the property—observed Efrain, barefoot, run into the house and lock the door behind him. Because they were concerned for Efrain's safety, the witnesses asked Efrain if he was ok, but Efrain did not respond. Efrain then ran into a bedroom and locked the door behind him.

17. When the police arrived and went inside the home, they allegedly observed Efrain in the bedroom under the bed.

18. According to the affidavit for probable cause for his arrest, Efrain advised officers that the reason he came into the residence was that a small boy told him that he could come inside.

19. Efrain's actions were consistent with him suffering from a mental illness, which explains why he trespassed onto someone's property located only a few blocks from his residence, unarmed and without shoes, and while the residents of the property were home, only to lock himself in a bedroom and hide under a bed from a danger only perceived by him.

20. After arresting Efrain, Galveston County police officers brought him to the Galveston County Jail at 5700 Ave H Galveston, Texas at approximately 2:18 p.m. He was held at the jail on one count of misdemeanor criminal trespass.

21. Efrain was placed in a mental health pod at the jail.

22. On November 29, 2020, Efrain appeared in court for bail review and the appointment counsel.

23. The court set bond at $1,000.00.

24. According to the court record documents, Efrain was unresponsive in court and did not speak with his appointed counsel.

25. Efrain's mental illness, exhibited by his strange behavior and lack of communication, made him an especially vulnerable inmate.

26. Later that evening, Defendants Wuneburger and John Does were securing Efrain inside his cell. Efrain approached the doorway, and an exchange occurred between Efrain and Defendant Wuneburger.

27. Defendant Wuneburger then violently attacked Efrain. During the attack, he pushed Efrain to the floor of his cell.

28. Defendant Wuneburger's excessive, needless force resulted in Efrain falling backwards and hitting his head.

29. Efrain was not resisting any correctional officers and he posed no threat or danger to them at the time Defendant Wuneburger used excessive, needless force against him.

30. At the time of the attack, Defendant Wuneburger was aware of Efrain's slight stature and his lack of a violent criminal history.

31. At the time of the attack, Defendant Wuneburger was aware of Efrain's mental health issues because Efrain was in a mental health pod and his mental health issues were readily apparent to any observer.

32. Defendant John Does observed the confrontation between Efrain and Defendant Wuneburger, had the opportunity to intervene, and did nothing to prevent Defendant Wuneburger from utilizing excessive, needless force against Efrain.

33. Efrain was transported to the University of Texas Medical Branch hospital in Galveston, Texas.

34. As a direct consequence of Defendant Wuneburger's attack of Efrain, Efrain suffered severe head injuries.

35. On or about November 30, 2020, Defendant Wuneburger was placed on administrative leave pending a use-of-force investigation.

36. On or about December 1, 2020, medical personnel determined that Efrain had no brain activity. Efrain was placed on a ventilator and remained in a chronic vegetative and completely incapacitated state for two weeks.

37. On December 14, 2020, at approximately 11:43 a.m., Efrain was officially pronounced dead. According to the medical examiner, his death was due to blunt force head trauma. The medical examiner determined the manner of death to be a homicide.

38. Following an investigation of Efrain's death, on or about June 24, 2021, a grand jury issued a bill of indictment against Defendant Wuneburger for manslaughter. The indictment accuses him of recklessly causing the death Efrain by pushing him with his hands.

## CONCEALMENT BY NON-PARTIES

39. Despite Efrain being the victim of a crime, neither the Galveston County Sheriff's Office nor the Galveston County District Attorney has provided information about the facts and circumstances surrounding Efrain's death to Efrain's family or its attorneys.

40. On information and belief, video captured Defendant Wuneburger's attack of Efrain. Neither the Galveston County Sheriff's Office nor the Galveston

County District Attorney has permitted members of Efrain's family or its attorneys to watch the video.

41. Neither the Galveston County Sheriff's Office nor the Galveston County District Attorney has communicated the findings of any investigation concerning what took place to members of Efrain's family or its attorneys.

42. Neither the Galveston County Sheriff's Office nor the Galveston County District Attorney has disclosed the names of any civilian or correctional-officer witnesses to members of Efrain's family or its attorneys.

43. Neither the Galveston County Sheriff's Office nor the Galveston County District Attorney has disclosed the results of the medical examiner's autopsy to members of Efrain's family or its attorneys.

44. The Galveston County District Attorney has failed to keep Efrain's family and its attorneys informed as to the status of criminal proceedings against Defendant Wuneburger.

45. The actions of the Galveston County District Attorney and the Galveston County Sheriff's Office have the appearance of preventing the discovery of information relevant to a potential lawsuit against the County and other culpable parties related to the violation of Efrain's constitutional rights.

## CAUSES OF ACTION

### Count I
### Fourth, Eighth and/or Fourteenth Amendment
### Excessive Force Against Pretrial Detainee
### Against Defendant Wuneburger
### (42 U.S.C. §1983)

46. Plaintiff restates and realleges by reference all preceding paragraphs as if fully set forth herein.

47. Defendant Wuneburger knowingly, purposefully, and with deliberate indifference to Efrain's constitutional rights, utilized objectively unreasonable force against Efrain.

48. As alleged herein, Efrain did not pose a threat to other inmates or any jail personnel, he was not resisting any correctional officer, he was not attempting to flee, and he was not causing a disturbance in the jail. For these reasons, Defendant Wuneburger's use of force was objectively unreasonable.

49. As further alleged herein, Efrain was a vulnerable inmate, unable to protect himself from violence due to his lack of violent criminal history, slight stature, and readily apparent mental illness. For these additional reasons, Defendant Wuneburger's use of force was objectively unreasonable.

50. Defendant Wuneburger's objectively unreasonable use of force violated Efrain's constitutional rights as secured by the Fourth, Eighth, and/or Fourteenth Amendments.

51. As a direct result of Defendant Wuneburger's objectively unreasonable use of force and deprivation of Efrain's constitutional rights, Efrain suffered injuries including pain, suffering, and ultimately his death.

52. As a further direct result of Defendant Wuneburger's objectively unreasonable use of force and deprivation of Efrain's constitutional rights, Efrain's next of kin suffered injuries including mental pain and anguish, lost love, companionship, comfort, and society.

## Count II

### Fourth, Eight and/or Fourteenth Amendment
### Failure to Intervene
### Against Defendant John Does 1–10
### (42 U.S.C. §1983)

53. Plaintiff restates and realleges by reference all preceding paragraphs as if fully set forth herein.

54. Defendant John Does 1–10 were present at the scene of the confrontation between Defendant Wuneburger and Efrain, saw that it was escalating, and had a reasonable opportunity to intervene both before and during Defendant Wuneburger's attack of Efrain.

55. Despite having a reasonable opportunity to intervene and prevent the violation of Efrain's constitutional rights and the physical injuries he sustained as a result, Defendant John Does 1–10 stood by and did nothing.

56. Defendant John Doe 1–10's failure to intervene violated Efrain's constitutional rights as secured by the Fourth, Eighth, and Fourteenth Amendments.

57. As a direct result of Defendant Wuneburger's objectively unreasonable use of force and deprivation of Efrain's constitutional rights, Efrain suffered injuries including pain, suffering, and ultimately his death.

58. As a further direct result of Defendant Wuneburger's objectively unreasonable use of force and deprivation of Efrain's constitutional rights, Efrain's next of kin suffered injuries including mental pain and anguish, lost love, companionship, comfort, and society.

## Count III

### Punitive Damages
### Against Defendant Wuneburger
### (42 U.S.C. §1983)

59. Plaintiff restates and realleges by reference all preceding paragraphs as if fully set forth herein.

60. Defendant Wuneburger's use of excessive, needless force against Efrain was motivated by evil intent and/or demonstrates a reckless or callous indifference to Efrain's constitutional rights.

61. Defendant Wuneburger's conduct renders him subject to punitive damages.

## DAMAGES

62. As a direct result of the unconstitutional conduct alleged herein, Efrain suffered pain and suffering, mental anguish, and death.

63. As a direct result of the unconstitutional conduct alleged herein, Efrain's next of kin have suffered mental pain and anguish, lost love, companionship, comfort, and society.

64. Plaintiff, individually and as representative of Efrain's estate, seeks general and special damages in an amount in excess of the minimum monetary jurisdictional limits of this Court.

65. Plaintiff seeks punitive damages pursuant to 42 U.S.C. §1983.

66. Plaintiff seeks an award of attorney fees and costs under 42 U.S.C. §1988(b).

67. Plaintiff seeks costs and pre-judgment and post-judgment interest as allowed by law.

## JURY DEMAND

68. Plaintiff demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court enter judgment in his favor and against Defendants awarding compensatory damages, punitive damages, attorneys' fees, costs, pre- and post-judgment interest, and such other and further relief this Court deems just and appropriate.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
State Bar No. 6184574
Kathleen T. Zellner & Associates, P.C.
4580 Weaver Parkway, Suite 204
Warrenville, Illinois 60555
(Ph) (630) 955-1212
(F) (630) 955-1111
attorneys@zellnerlawoffices.com

/s/ Matthew D. Doss
Matthew D. Doss
State Bar No. 24069624
Youngkin & Doss, PLLC
3131 E. 29th Street
Bldg. D – Suite 200
Bryan, Texas 77802
(Ph) (979) 776-1325
(F) (979) 776-1315
matt@youngkinlaw.com

/s/ Philip Rodriguez
Philip Rodriguez
State Bar No. 24079231
3131 E. 29th Street
Bldg. D – Suite 200
Bryan, Texas 77802
(Ph) (979) 776-1325
(F) (979) 776-1315
philip@yougkinlaw.com